IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

2006 OCT 11  A 9: 23

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

| | |
|---|---|
| MAYRENE GRANGER, ) | |
| and WILLIE MAE SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1 06CV-917-WKW |
| ) | |
| CITY OF ASHFORD, BRYAN D. ) | JURY DEMAND |
| ALLOWAY, in his Official Capacity ) | |
| as Mayor, AND in his Individual Capacity. ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

### I.     INTRODUCTION

1.     This is an action for declaratory judgment, equitable relief, and money damages, instituted to secure the protection of and to redress the deprivation of rights secured through 42 U.S.C. § 1981 and the United States Constitution, which provides for relief against discrimination in employment on the basis of race and retaliation related thereto. The plaintiffs seek compensatory and punitive damages, and request a jury trial pursuant to 42 U.S.C. § 1981. The plaintiffs assert their claims for relief for the defendant's violations of §1981, and the Equal Protection Clause of the Unites States Constitution via 42 U.S.C. §1983. The plaintiffs seek compensatory and punitive damages and request a trial by jury of all issues triable by a jury. Further, the plaintiffs seek attorneys' fees pursuant to 42 U.S.C. § 1988.

### II.     JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 1343(4); and 28 U.S.C. §§ 2201 and 2202.

3. A substantial part of the unlawful employment practices challenged in this action were committed by the defendant within Houston County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

4. The plaintiffs request a jury trial on all issues pursuant to 42 U.S.C. § 1981a.

### III. PARTIES

5. Plaintiff, Mayrene Granger ("Granger"), is an African-American female citizen of the United States, and a resident of the State of Alabama. Plaintiff is employed by the defendant, City of Ashford.

6. Plaintiff, Willie Mae Smith ("Smith"), is an African-American female citizen of the United States, and a resident of the State of Alabama. Plaintiff was formerly employed by the defendant, City of Ashford.

7. Defendant, City of Ashford (hereinafter "Ashford"), is an employer and is thus covered by §1981. At all times relevant to this action the plaintiffs were employees of the defendant and were rightfully attempting to make and/or enforce the terms of contract(s) regarding their employment.

8. Defendant, Bryan Alloway (hereinafter "Alloway"), at all times material to this action, was the Mayor of the City of Ashford.

### IV. FACTS AND CLAIMS

9. Plaintiff Granger has been employed by the City of Ashford for ten (10) years and at the time of this filing is still employed with the City of Ashford.

10. Plaintiff Smith was employed with the City of Ashford for five (5) years until her termination on October 14, 2004.

11. Throughout the plaintiffs' employment, they were subjected to a racially hostile and discriminatory environment, including, but not limited to, the following actions: being treated in a demeaning and discriminatory manner; having white employees promoted over them; not receiving adequate training; being demoted and their jobs given to white employees; having their pay cut; being exposed to racially derogatory jokes and comments; not being informed of department meetings, and on October 14, 2006, Smith was discriminatorily terminated.

12. The racially hostile work environment and discrimination was so severe and/or pervasive that it interfered with Smith's work and was and continues to be so severe and/or pervasive that it interfered with and continues to interfere with Granger's work.

13. On or about February 6, 2001, Granger was promoted, by the City Council, to Utilities Director, a salaried position. Granger held this position for approximately four years. She did not receive any training for this position. During that time, she received no complaints from the Council or the Mayor regarding her job performance and no disciplinary action was taken against her.

14. In October 2004, the Mayor, Bryan Alloway, informed Granger that Larry Hubbard, a white male, was being hired and would replace her as Utilities Director. Alloway informed Granger that hiring Hubbard meant Granger would be returned to the "right tax bracket". Alloway then informed Granger that she was being demoted to Street and Sanitation Supervisor. Granger questioned this move as she had not been made aware of any complaints made against her, nor had she received any write ups or poor performance evaluations. Alloway did not provide answers to Granger's questions.

15. Following the meeting with Alloway, it was Granger's understanding she would still be under the Mayor's supervision in her new position; however, when Hubbard took over as Utilities Director, he treated Granger as if he were her supervisor. After Hubbard took over, Granger had to give him her City issued cell phone because she would not be taking any calls requesting assistance; however, the white employees who did not take assistance calls were allowed to keep their cell phones. Granger also had to give up her office, her computer and turn in the City truck that had been assigned to her. Although Granger was told she was a Supervisor, Alloway and Hubbard would not notify of her of Department Head meetings and she was only able to attend these meetings if she found out about them by accident.

16. In May 2005, Hubbard told Granger that he needed her to drive the garbage truck, the job she was originally hired to perform. Granger thought she was being asked to drive the truck because the usual driver was on vacation; however, this became a permanent demotion. On or about June 24, 2005, Alloway and Hubbard met with Granger. Alloway told Granger that he had made a mistake putting in her in the position of Street and Sanitation Supervisor because she could not do the job. However, until this time, she had not been made aware of any complaints and/or had any problems carrying out her duties. Alloway offered Granger the position of garbage truck driver which paid $10.00 per hour or $400.00 per week. As the Utilities Director and Street and Sanitation Supervisor, Granger had earned $625.00 per week. The demotion meant she would be earning $225.00 less per week and that she would be back at the same level she had started on nine years before. Additionally, Hubbard changed Granger from a salaried employee to an hourly employee. Granger accepted the position as the only other alternative was to quit her job. However, when she accepted the position; Granger sent a letter to Alloway explaining that she believed she had been

4

demoted twice and her pay had been cut due to discrimination based on her race and sex. Further, she explained that she had tried to talk to Alloway about her complaints on several occasions; however, he refused to discuss these issues with her. Alloway did not respond to her allegations of race and sex discrimination. Although Granger did not accept the position until June 30, 2005, she received her first pay check on July 1, 2005, which included the pay cut.

17. After Granger's written complaint regarding racial discrimination, Alloway would not speak to her and deliberately ignored her when she spoke to him. Hubbard began making snide remarks to her and/or ignoring her. Hubbard would make a point to stand right in front of Granger while she was sitting in the shop with his back to her and his buttocks level with her face. He would not speak to her; instead he would just stand there and ignore her. Hubbard also tried to write her up for poor job performance; however, he had to rescind the write ups when Granger proved the allegations in the disciplinaries were untrue. Hubbard verbally reprimanded Granger for not performing duties that were actually his duties. When she was not driving the garbage truck, Hubbard would assign Granger to work alone posting citations for late water bills or cutting off water due to non-payment while allowing the white male employees to work together in pairs. Granger was also ostracized by the white employees in City Hall who worked closely with the Mayor and Hubbard. In October 2005, Granger questioned Hubbard about the discriminatory way she was being treated by him, Alloway and the white employees in City Hall. Hubbard did not have an answer for her.

18. In December 2005, Granger was required to testify in a matter involving the City of Ashford. Alloway went out of his way to be nice to her because he needed her help in court. While preparing for court, Alloway made the statement that he was worried the opposing attorney would

try to make Granger appear stupid because she was black, a female and at the time in question, she was working in a man's position.

19.     Smith was put on the City of Ashford's payroll in February 1999. She worked for the City of Ashford for several years prior to being put on payroll cleaning City Hall and answering the telephone. Smith was paid from the petty cash fund until she was given the job of assisting the City Clerk which required she be put on payroll. Smith's duties included picking up and sorting the mail, printing and mailing water bills, making deposits, and collecting money for water bills. At first, Smith could only accept payments being made by check as she was not bonded to handle cash payments. She was bonded shortly after being put on payroll and began accepting cash payments as well.

20.     Smith was not appointed as the Water Clerk until May 2004. During the first year of Smith's employment, the City of Ashford hired three different white females for the Water Clerk position. Smith had to perform the duties of the Water Clerk when these ladies failed to show up for work; however, she was not afforded the same training the white employees were given. Additionally, Smith was originally assigned a large desk in the front of the office. However, she was moved to a small desk in a back corner when the white females were hired as Water Clerk. Further, Smith, the only black employee in the City Hall Office, was only given a thirty minute lunch break while the white employees were given a full hour for lunch break.

21.     The last of the three white female Water Clerks left between the middle and end of 2000. Smith performed the duties of the Water Clerk until May of 2001 without benefit of the title and/or the benefits. Additionally, the City Clerk was put on leave near the end of 2000, and Smith was required to perform her job duties, again without benefit of the title and/or benefits, while still

performing the Water Clerk job duties.

22. Smith worked from May 2001 until October 2004, as the Water Clerk. She did not receive any write ups and/or any complaints on her job performance during that time. Smith's last date of employment was October 14, 2004. She was terminated for no reason and Smith's position was filled by a white female.

23. Throughout their employment with the defendant, the plaintiffs complained of the racially discriminatory treatment of themselves and of other African-American employees.

24. The Plaintiffs' supervisors were aware of and participated in the racially discriminatory actions, and did not take any disciplinary action to correct or prevent further discriminatory actions.

## COUNT I
## RACE DISCRIMINATION AND RETALIATION IN
## VIOLATION OF 42 U.S.C. §1981

25. The plaintiffs reallege and incorporate by reference paragraphs 1- 24 above with the same force and effect as if fully set out in specific detail hereinbelow.

26. The defendants intentionally, willfully, and maliciously discriminated against the plaintiffs, at least in part, on the basis of the plaintiffs' race, African-American, by reducing their pay, demoting them, by subjecting them to stricter scrutiny than similarly situated white employees, and by ultimately terminating Smith's employment.

27. The plaintiffs made several, good faith complaints in opposition to racial discrimination against themselves and other African-American employees.

28. As is discussed above, the defendants subjected the plaintiffs to retaliation at least in part for their opposition to race discrimination, by ostracizing them, demeaning them, demoting

them, and on October 14, 2004, Smith was discriminatorily terminated.

29. The defendants' conduct was retaliation based, at least in part, on the plaintiffs' protected activities of opposing racial discrimination.

30. The defendants engaged in the practices complained of herein with malice and/or with reckless indifference to the plaintiffs' federally protected rights.

31. The defendants, as the employer of plaintiffs, failed to take any prompt and effective remedial action reasonably calculated to result in the prevention and/or remedy of the racial discrimination of plaintiffs.

32. Plaintiffs suffered damages as a proximate result of these violations, which were caused by the defendants' policy or custom and/or a failure to adequately train caused by deliberate indifference to the plaintiffs' rights and/or by deliberate indifference to those violations.

33. The defendants thus have violated the proscriptions against racial discrimination and retaliation found in 42 U.S.C. §1981.

34. As the result of the defendants' conduct, the plaintiffs were deprived of income and other employment benefits. They have also suffered embarrassment, humiliation, inconvenience, and mental distress.

35. Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for a declaratory judgment, backpay, an injunction, and compensatory and punitive damages is their only means of securing adequate relief.

36. Plaintiffs are suffering and will continue to suffer irreparable injury from defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## VII.   PRAYER FOR RELIEF

WHEREFORE, the plaintiffs respectfully pray that this Court assume jurisdiction of this action and after trial:

1. Issue a declaratory judgment that the employment policies, practices, procedures, conditions, and customs of the defendant are violative of the rights of the plaintiffs as secured by 42 U.S.C. §1981.

2. Grant the plaintiffs a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys, and those acting in concert with the defendant, from continuing to violate 42 U.S.C. §1981.

3. Enter an Order requiring the defendant to make the plaintiffs whole by awarding them reinstatement for Smith, front pay, lost wages (plus interest), liquidated damages, compensatory and punitive damages, and loss of benefits including retirement, pension seniority and other benefits of employment.

4. The plaintiffs further pray for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

Respectfully submitted,

*Bobbie S. Crook*

**BOBBIE S. CROOK (CRO-040)**
**Attorney for Plaintiff**
367 South Saint Andrews Street
Dothan, AL 36301
(334) 671-8062

OF COUNSEL:
Ann C. Robertson
**Attorney for Plaintiff**
WIGGINS, CHILDS, QUINN & PANTAZIS, L.L.C.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0514

THE PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.

*/s/ Bobbie S. Cook*
OF COUNSEL

Plaintiff requests this Honorable Court to serve via certified mail upon the named defendant the following : Summons, Complaint.

**Defendant's Address:**

City of Ashford
P.O. Drawer 428
Ashford, AL 36312

Mayor Bryan D. Alloway
P.O. Drawer 428
Ashford, AL 36312

*/s/ Bobbie S. Cook*
OF COUNSEL